UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KAHALA FRANCHISE CORPORATION )<br>A Delaware corporation, )<br>    Plaintiff, )<br>)<br>vs. )<br>)<br>NABIL MAKHAMREH, Individually, )<br>MATTHEW CHEESESTEAK, Inc., )<br>an Illinois Corporation, and M & S )<br>CHEESESTEAK, INC. , a Virginia )<br>corporation. )<br>    Defendants. ) | Case No.  08  CV  4750<br><br>Judge:  DOW, JR.<br><br>Magistrate:  JUDGE BROWN |

**MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR TEMPORARY
<u>RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>**

**<u>Introduction</u>**

KAHALA ("KAHALA"), has brought this action to enjoin the Defendants (existing franchisees) from competing with KAHALA and to enforce In-Term Non-Compete Agreements entered into with its franchisees.  Defendants, corporate franchisees Matthew Cheesesteak, Ind. And M & S Cheesesteak, Inc., are owned and operated by Defendant Nabil Makhamreh.

The Defendants are current franchisees of KAHALA and own and operate two (2) Great Steak and Potato (hereinafter "GSP") restaurants.  Recently, the Defendants purchased and opened a competitor's franchised restaurant servicing substantially the same foods items (Charley's Grilled Subs).  KAHALA and its predecessors was, and is, in the business of establishing and operating franchised restaurants under a standard, unique, and uniform business systems developed by KAHALA, including the right to use its federally registered proprietary trademarks and service marks.  This case involves the

KAHALA System "The Great Steak and Potato" system with 224 franchisees in the United States.[1] Defendants, are current KAHALA franchisees and have been since 2004. Defendants now operate a competitor's franchise restaurant serving Philly cheesesteaks, fresh cut potatoes, and fresh squeezed lemonade at the Yorktown Mall in Lombard, Illinois. These are GSP's same core and signature menu items served at Defendant restaurants and 224 other GSP locations. Operating a substantially similar restaurant serving those food items during the term of their Franchise Agreement is in violation of the Franchise Agreements. The competitors franchise is Charley's Grilled Subs ("Charley's"). KAHALA seeks injunctive relief and damages to have Defendants' new restaurant shut down because it unfairly competes with KAHALA's GSP, and violates the Franchise Agreements. Alternatively, Defendants need to immediately divest themselves of any ownership in Charley's.

KAHALA and Defendants entered into two (2) Franchise Agreements by the terms of which Defendants were granted a franchise to operate GSP restaurants **(Exhibits "A" and "B" to Complaint).** In connection with, and as a condition of entering into the Franchise Agreements, Defendants executed a Non-Compete Agreement wherein they promised and agreed that they would not operate another substantially similar restaurant during the term of the Agreements. See Sections 15 and 14.5 of the Franchise Agreements, a copy of which are attached to the Complaint as Exhibit "A" and "B".

Recently, Defendant Makhamreh opened his competing Charley's restaurant (July 2008) serving Philly cheesesteak sandwiches and operating using the confidential information, trade secrets, and way of doing business learned from KAHALA's GSP over

---

[1] In addition to Great Steak and Potato, KAHALA offers franchises in 12 other franchise concepts totaling more than 4100 individual franchises: Blimpie; Cerality; Cold Stone; Frulatti;

the past 4 ½ years. Defendant Nabil Makhamreh, recently acquired as owner, directly or indirectly performs services for, in an employee of, has a financial or equity interest in a business substantially similar to that established by Defendants pursuant to their Franchise Agreements with Plaintiff, and in competition with the 224 "Great Steak and Potato" restaurants licensed by Plaintiff nationwide. KAHALA has a legitimate business interest in having Defendants' new restaurant, Charley's closed, or alternatively in having Defendants disassociated with the competitor because of the unfair competition.

KAHALA entered into the Franchise Agreements with Defendants only after Defendants agreed that they would not compete in the same business during the term of the Agreements and after for a period of time. Defendants are in violation of this agreement by their simultaneous operation of a similar business offered by a competing franchise company while the Franchise Agreements are still in effect. Defendants cannot be allowed to benefit from the association with KAHALA, learn its way of doing business, trade on its goodwill, profit from its established reputation, and service the same customers in competition with KAHALA.

For the reasons set forth below Defendants should be ordered to vacate the Lombard, Illinois restaurant premises and cease operating the competing business due to the violation of the Franchise Agreements and unfair competition. Defendants should be enjoined from directly or indirectly engaging in any business substantially similar with the business of GSP. Alternatively, Defendants should be ordered to transfer its ownership to a bona fide unrelated party.

---

Johnnies; Nrgize; Ranch*1; Rollerz; Samurai Sams; Surf City Squeeze; Taco Time; Wafflo.

3

I.  **KAHALA IS ENTITLED TO AN INJUNCTION PREVENTING DEFENDANTS' CONTINUING BREACH OF THEIR IN-TERM NON-COMPETE AGREEMENTS AND UNFAIR COMPETITION**

KAHALA is entitled to injunctive relief for enforcement of the In-Term Non-Compete Agreement contained in the two (2) separate Franchise Agreements, ¶ 15 and ¶14.5 respectively in Exhibit "A" and "B". Illinois law enforces in-term non-compete and thus KAHALA will prevail on the merits of the case because the Non-Compete Agreements protects KAHALA's legitimate business interests that are reasonable and enforceable. The Non-Compete clauses provides for an entry of Injunctive Relief. Further, KAHALA is being irreparably harmed by Defendants' continued operation of the business in violation of the non-compete provisions. The balance of harm favors KAHALA because its franchisees are blatantly disregarding the Covenant Not-To-Compete and continue to reap the benefits of their bargain without complying with the terms of the Agreements. The public interest would be served by the enforcement of a valid agreement, and finally, KAHALA has no adequate remedy at law.

Here the non-compete provisions of the Franchise Agreements has Defendants' acknowledgement of immediate and irreparable harm. Defendants, entered into a Franchise Agreement by the terms of which Defendants were granted franchises to operate a KAHALA franchised restaurants ("Exhibits "A" and "B" to Complaint).

Defendants are breaching the Non-Compete Agreement, which protects KAHALA's legitimate business interest in the following respects:

    a.    Preventing Defendants from duplicating the business system and using trade secrets and confidential information to operate substantially similar restaurants;

    b.    Preventing confidential information supplied to GSP franchisees from being used by competitors of KAHALA (such as

Charley's);

      c.    Enforcing the In-Term Non-Compete protects the integrity of the KAHALA GSP franchise system. 224 franchised GSP locations are in jeopardy of being compromised, economically damaged and potentially lost if franchisees of GSP were to believe the In-Term Covenant Not To Compete was not enforceable. KAHALA is justifiably concerned that the defendants' activities constitute a real and imminent threat that some or all of the existing GSP franchisees would be in jeopardy, and the revenues Kahala derives from these locations would be lost, and Kahala's GSP system and the value of its investment in the system irreparably harmed if the In Term Covenant Not To Compete is not enforced. This would pave the way for GSP franchisees to enter into competing businesses without restraint.

      d.    It is clear, that Defendants intend to compete against KAHALA because they have opened a similar restaurant serving the same menu items to the same or similar clientele;

      e.    The Franchise Agreement prohibits just the specific conduct, i.e., establishing any type of business substantially similar to that of a KAHALA GSP system restaurant establishment.

Defendants acknowledge that KAHALA possessed certain confidential information regarding ways of doing business which gave franchisees a competitive advantage. Defendants agreed not to compete during the term of the Agreements in return for use of that information and the valuable property interests of the KAHALA GSP trademark.

The Non-Compete Agreement states in relevant part as follows:

    15.    **NON-COMPETE**.

* * *

*15.1) During the term of this Agreement, Franchisee and the officers, directors, shareholders and agents of a corporate Franchisee shall not without the prior written consent of Franchisor directly or indirectly , through corporations, partnerships, trusts, associations, joint ventures, or other unincorporated businesses, perform any service for, engage in or acquire, be an employee of, have any financial, beneficial or equity interest in, or have any interest based upon the profits or revenues of, any business substantially similar to that established*

5

*pursuant to this Agreement; provided, however, that the foregoing restriction shall not apply to interests of 1% or less in a publicly traded entity.*

*\* \* \**

*15.4) For purposes of Section 15.1, 15.2 and 15.3, a "substantially similar business" is a business which sells or prepares Philadelphia style cheesesteak sandwiches, and/or variations which include ham, chicken, turkey and vegetarian sandwiches.*

### 9.7 CONFLICTING AND COMPETING INTERESTS

*You agree that during the term of this Agreement, neither you, nor your officers, directors and holders of more than ten percent (10%) of your stock (if you are a corporation), nor your partners (if you are a partnership), not your members who have a ten percent (10%) or greater interest (if you are a limited liability company), nor your designated manager will, directly or indirectly, maintain, engage in, have a controlling interest in, lend money to, consult with or otherwise assist any business that is engaged in the business of selling Philadelphia Cheesesteak sandwiches, fresh-cut French fries, and baked potatoes with all of the toppings.*
p. 22

### 14.5 CONFIDENTIALITY: COVENANT NOT TO COMPETE

*\* \* \**

*c. During the term of this Agreement … Franchisee shall not engage in any business in competition with any Great Steak and Potato restaurant. The provisions of this Agreement bind Franchisee in any capacity, including as a franchisee, sole proprietor, partner, limited partner, member employer, franchisor, stockholder, officer, director, or employee. For purposes of this paragraph, "competition" means the franchising, ownership, or operation of a restaurant similar to Great Streak and Potato" outlet at the location identified in Section 1.1 of this Agreement, or within a geographical area consisting of: (1) during the term of this Agreement, anywhere else. The term of this covenant will be extended by any time consumed in litigation to enforce it in both trial and appellate courts. If a court of competent jurisdiction determines that the restrictions in this paragraph are excessive in time, geographic scope, or otherwise, the court may reduce the*

> *restriction to the level that provides the maximum restriction allowed by law.*
>
> *d. During the Term of this Agreement, … you shall not divert or attempt to divert any business, customers, or potential customers of the Great Steak and Potato System to any competitor, by direct or indirect inducement or otherwise. In addition, you shall not at any time do or perform any act, directly or indirectly, which harms the goodwill or reputation of Franchisor or the System.*
> Exhibit B – p.22 ¶9.7 and pp. 37-38 ¶14.5 (c) and (d).

Generally covenants not to compete in the franchise context are formulated to protect the franchisors' legitimate business interest. [2]

### A. KAHALA Has a Strong Likelihood of Success On the Merits.

KAHALA will likely prevail on the merits because it is seeking to enforce a Covenant Not-to-Compete reasonably limited in scope to protect its legitimate business interests. It is faced with a blatant act of unfair competition by its franchisee who have opened a competing substantially similar franchise. Illinois courts will enforce a Covenant Not-To-Compete, ancillary to a Franchise Agreement, after determining whether the restriction is reasonable or necessary in its full extent for the protection of the one party and at the same time, not oppressive to the other party or injurious to the interests of the general public. <u>Comprehensive Accounting Corp. v. Talmage</u>, 758 F.2d 162 (6th Cir. 1985) (Applying Illinois law to determine the enforcement of a restrictive covenant contained in a franchise agreement.). <u>McDonald's System, Inc. v. Sandy's, Inc</u>., 195 N.E.2d 222 (2nd Dist. 1963) the franchise duplicate the McDonald's restaurant, the Court found McDonald's a legitimate business interest, justifying enforcement of the in-term non-compete.

---

[2] It is well settled that damages for breach of non-compete provisions are difficult to demonstrate, that injunctive relief has become a favored remedy. (Miller Mechanical, Inc. v. Ruth, 300 S. 2nd 11, 13 (Fla. 1974).

7

In the franchise context, covenants not-to-compete are generally held to be valid and enforceable if their terms are "reasonable". To be "reasonable", an in-term covenant against competition must be designed to protect the legitimate interest of the franchisor. The non-compete provisions in question are contained in the Franchise Agreements and were entered into at the time of the inception of the relationship between the parties for value. Therefore, the provisions are clearly ancillary to the Franchise Agreement. [3]

This case differs somewhat from many other covenant not to compete cases in the franchise context which occur after the franchise relationship ended. Here, the enforcement of the covenant against competition or "loyalty provision" is applicable during, rather than following, the term of the Franchise Agreement. This "in-term" enforcement is well settled in favor of the franchisor. Just as employees owe their employers a common law duty not to compete while employment continues, the rules in Illinois are clear with respect to franchisees who, even though they are independent contractors of the franchisors, they may not compete while the franchise relationship is in place.

Illinois has long distinguished between in-term and post-term covenants not to compete. See, e.g., The Vendo Co. v. Stoner, 105 Il.App.2d 261, 245 N.E.2d 263 (1969). During the term of the Franchise Agreement, Illinois courts enforce in-term covenants not

---

[3] See e.g., Dunkin' Donuts, Inc. v. Sharif, Inc., 291 F.Supp.2d 149 (D.N.M. 2003) (Franchisor has a legitimate interest in prohibiting the former franchisee from using its trademark and proprietary information after the franchise agreement has expired); Minuteman Press Int'l, Inc. v. ANBAM, LLC., Bus. Franchise Guide (CCH) ¶12,576 (E.D.N.Y. 2003)(franchisor has a legitimate interest in preventing the former franchisee from benefiting from the franchisor's proprietary information and in protecting the franchsing's customers from confusion regarding the provider of the goods and services.); ServiceMaster v. Westchester Cleaning Services, Bus. Franchise Guide (CCH) ¶12,073 (S.D.N.Y. 2001)(court acknowledged that a franchisor has a legitimate interest in preventing its former franchisee from using its proprietary information regarding how to run the business to compete with the franchisor and from using the business contacts and relationships that the franchisee established during the course of its franchise); DAR & Assoc., Inc. v. Uniforce Servcs., Inc., 37 F.Supp. 2d 192 (E.D.N.Y. 1999)(court held that under New York law, training, goodwill and ability to re-franchise the same area); Gimapapa v. Carvel Corp., Bus. Franchise Guide (CCH) ¶11,442 (D.N.J. 1998)(court held that a franchisor has a legitimate interest in protecting its knowledge necessary to run a franchise which is valuable to franchisor and its competition); Grease Monkey Int'l v. Watkins, 808 F. Supp. 112, 120 (D.Conn. 1992)(court held that franchisor may seek to "protect its trademark and business practices, and to seek to maintain or establish relations with its present and potential customers").

8

to compete irrespective of their geographic scope. McDonald's System, Inc. v. Sandy's, Inc., 195 N.E.2d 222 (2nd Dist. 1963). (injunction against a McDonald's franchisee who started a virtually identical restaurant (Sandy's), with the menu of items and prices similar in violation of In-Term covenant.

Franchisors typically are awarded injunctive relief against franchisee breaches of the In-term covenants against competition. Generally, courts recognize that franchisees have current access to confidential information, trade secrets, marketing strategies, operating methods and policies. The Seventh Circuit upheld a Burger King in-term non-compete in Franchise Agreements. The Burger King franchisee was enjoined from opening competing fast food Hardees restaurant while still a Burger King franchisee. Deutchland Enterprises Ltd. v. Burger King Corp., 957 F.2d 449, 453 (7th Cir. 1992) ("the agreement was found to be essential and reasonable for a fast food chain to prohibit franchisees from operating its restaurants and those of the competitors"); See also: Westbury Donuts, Inc. v. Dunkin' Donuts of America, Bus.Fran.Guide (CCH) ¶ 7,871 (E.D.N.Y. 1992) (upholding covenant not to operate any business substantially similar to a Dunkin Donuts franchise during term of franchise agreement); Pecos Pizza Franchises, Inc. v. Sisemore, Bus.Fran.Guide (CCH) ¶ 8,041 (E.D.Wash. 1983) (upholding non-competition provision prohibiting pizza franchise from selling pizzas within any market area where franchisor did business during term of franchise agreement and for three years thereafter).

In term non-compete provisions, have been upheld by courts in a number of jurisdictions. See Deutchland Enterprises, Inc. v. Burger King Corp., 957 F.2d 449 (7th Cir. 1992); Major v. Orthopedic Equip. Co., 496 F.Supp 604 (D.C. Va. 19080); Saul v. Thalis,

9

156 F.Supp. 408 (D.D.C. 1957); Nelson v. Agro Globe Eng'g., 578 N.W.2d 659 (Iowa 1998); Orthopedic Equip. Co. v. Streetman & Assoc., Inc., 390 So.2d 134 (Fla.App.1980). Courts upholding such covenants have recognized that franchisors, after sharing their operating methods and secrets, have a legitimate interest in protecting themselves form competition by franchisees. See, Deutchland Enterprises, Inc. v. Burger King Corp., 957 F.2d at 453.

Franchising facilitates business opportunities and enables individuals to own and operate businesses. Franchisors must be entitled to broad protections during the terms of the franchise agreements to ensure that franchisees do not abuse the privileges granted by the franchise relationship. "As long as [franchisees] seek to avail themselves of the beneficial provisions of their franchise contract, they should not be permitted to disregard or refuse to abide by the several obligations they have assumed." Vendo Co. v. Stoner, 245 N.E.2d 263, 28-85 (Ill.App. 1969)(quoting McDonald's Sys. Inc. v. Sandy's, Inc., 195 N.E.2d 22, 22 (Ill. 1963)). To allow otherwise would leave the franchisor vulnerable to predatory franchisees, because "[f]ranchisees have advance notice of the franchisor's marketing strategies, and access to its operating methods and policies." Duetchland Enterprises, Ltd. V. Burger King, Corporation, 957 F.2d 449, 453 (7th Cir. 1992).

The Duetchland case is on all fours as it found the in-term non-compete provision similar to the one at bar to be enforceable. The facts and law are virtually identical. (The franchisee has 2 Burger Kings and then opened a competing Hardees restaurants. Here, defendants have two Great Steak and Potato and recently opened a competing Charley's with substantially similar food. The Deutchland court found that the "same or similar" clause in the franchise agreement at issue there served to reinforce the policies underlying

10

the franchise agreement, because it enabled the franchisor to protect its information, marketing strategies, and operating policies from appropriation. Id., 453. [4]

The Franchisor's goodwill and its interest in the re-sale of the franchise have been held to support non-competition clauses. In Piercing Pagoda, Inc. v. Hoffner, 468 PA 500, A.2d 207 (1976); The Court held that under a Franchise Agreement where, for example, the franchisor provides business expertise, business training, use of a corporate name and logo, advertising assistance and exclusivity rights in certain geographical area, the Franchisor's interest may be properly protected by a reasonable covenant not to compete for the term of the Agreement and for a period following termination of the contract. 351 A.2d at 210.

Further, defendants are in direct competition with numerous of KAHALA's other franchisees in Illinois (29) including ironically, themselves in Bloomington, Illinois. KAHALA has a legitimate business interest in not having the Defendants compete against its remaining franchisees through the utilization of the same system of doing business derived through their association with the KAHALA GSP Franchise System.

In-term enforcement of non-compete provisions in the franchise context have consistently been held to be necessary to protect the customer goodwill of the franchisor. The goodwill developed with Defendants' customers is precisely the kind of interest which is protectable. Franchisees such as the Defendants are trained to establish and to develop a business relationship with their customers and to acquire their goodwill. This goodwill was established in part because of the reputation of the KAHALA GSP Name and System,

---

[4] The agreement at issue in Deutchland contained the following language:" Franchisee agrees that during the term of this agreement it shall not engage in any restaurant or prepared food business which is the same or similar to Company's business. Deutchland, 957 F.2d at 450. This language was found to be reasonable and the District Court's ruling that the language was enforceable was affirmed by the 7th

and as such, KAHALA has a protectable interest in maintaining this goodwill, and it should not have to compete for these customers with the Defendants.

### B. KAHALA is Threatened with Immediate and Irreparable Injury and Will Have no Adequate Remedy at Law.

KAHALA will be placed in a distinct competitive disadvantage in the absence of strict enforcement of the during the term Covenant Not-To-Compete. Additionally, KAHALA will be irreparably harmed by the adverse impact of not being able to enforce the in-term non-compete provision. This impact will be felt throughout the entire franchise system and will undermine the effectiveness of its Franchise Agreements with all of its other 224 franchisees in the GSP system. Any failure to enforce the covenant could signal to other franchisees of the system that they can leave and compete with the system with impunity during the term or after.

If the non-compete provision is not enforced, KAHALA will be irreparably harmed by the inability locating a franchised GSP in the Yorktown Mall because any new franchisee will hesitate to enter the market if the franchisees are permitted to remain there and to benefit from their affiliation with KAHALA. The franchisee has acknowledged in the Franchise Agreement the confidential nature of KAHALA's proprietary information and its system of doing business. Once this information has been disclosed to this franchisee, it cannot be withdrawn unless they are prohibited from competing in that marketplace. Therefore, KAHALA would be irreparably injured if the Defendants were allowed to operate their competing business in competition with KAHALA. Unless enjoined, the Defendants will continue to trade on the goodwill and reputation of KAHALA, the knowledge and skill

---

Circuit. *Id.*, at 454.

obtained from KAHALA, and KAHALA will have no way to obtain an accounting for such improper use. Therefore, the only reasonable means to insure against the continued erosion of KAHALA's protectable business interests is to grant the requested injunctive relief to close the competing business in Lombard, Illinois and Order Defendants to transfer all ownership interests.

### C. The Balance of Harm Favors KAHALA.

The Defendants will not be prevented from making a living or pursuing the business that they now know, albeit through the guidance and training provided by Plaintiff. They can continue to operate as a KAHALA GSP franchisee if they cure these defaults as they agreed to. However, they should not be able to benefit from their association with KAHALA nor benefit from the goodwill engendered by that association. These Defendants entered into the Franchise Agreements including the Covenants Not-To-Compete voluntarily after arms length negotiations and are presumed to have realized the consequences of not living up to their end of the bargain. See, Comprehensive v. Talmage, supra; O'Sullivan v. Conrad, 44 Ill. App. 3d 752, 757, 3 Ill. Dec. 383, 387, 358 N.E.2d 926, 930 (1976).

WHEREFORE, for each and all of the foregoing reasons, KAHALA respectfully requests that this Court issue a Temporary Restraining Order and a Preliminary Injunction enjoining the Defendants from operating the competing business at the location in Yorktown Mall, Lombard, Illinois or any other similar business violative of the interim non-compete provisions, closing the store until ownership can be transferred to un-interested parties, awarding damages derived from the operation of the Charley's restaurant, and awarding Plaintiff its reasonable attorney's fees for prosecuting this action pursuant to the Franchise Agreements and for further relief requested in the Verified Complaint.

Date:  August 18, 2008                    Respectfully submitted,

                                        KAHALA FRANCHISE CORP.


                            ss//   _____
                                              Gregory J. Ellis


Gregory J. Ellis, Esq.
GREGORY J. ELLIS, ESQ., LTD.
1 Executive Ct #1
South Barrington,  IL  60010
847/842-0999
Attorney No. 03127073
8/20/08